LAWYERS FOR CLEAN WATER, INC.
Daniel Cooper (Bar No. 153576)
Email: daniel@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
Email: drev@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:  (415) 440-4155

*Attorneys for Plaintiff*
LOS ANGELES WATERKEEPER

*Plaintiff's Additional Counsel Listed On Next Page*

LAW OFFICES OF THOMAS M. BRUEN, P.C.
Thomas M. Bruen (Bar No. 63324)
Email: tbruen@tbsglaw.com
1990 N. California Boulevard, Suite 620
Walnut Creek, California 94596
Telephone:   (925) 295-3131
Facsimile:    (925) 295-3132
*Attorney for Defendants*
REPUBLIC SERVICES, INC. AND CONSOLIDATED DISPOSAL SERVICE, LLC

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>REPUBLIC SERVICES, INC., et al<br><br>          Defendants. | Civil Case No.<br><br>CV14-00931-DDP (PLAx)<br><br>**ORDER RE: CONSENT DECREE AND JUDGMENT**<br><br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LOS ANGELES WATERKEEPER
Tatiana Gaur (Bar No. 246227)
Email:  tgaur@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, California 90401
Telephone:  (310) 394-6162, ext. 102
Facsimile:  (310) 394-6178

ORDER RE: CONSENT
DECREE AND JUDGMENT

Case No. CV14-931-DDP (PLAx)

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Los Angeles Waterkeeper ("Plaintiff" or "Waterkeeper") and Defendants Republic Services, Inc. and Consolidated Disposal Service, LLC (collectively "Republic" or "Defendants"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS,** Waterkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant Consolidated Disposal Service, LLC ("Consolidated") is the owner and/or operator of a waste processing and transfer facility located at 1512 N. Bonnie Beach Place, Los Angeles, California 90063, hereinafter referred to by the Settling Parties as the "East LA Facility";

**WHEREAS**, Consolidated Disposal Service, LLC is a subsidiary of Republic Services, Inc.;

**WHEREAS**, Los Angeles Waterkeeper has approximately 3,000 members who live and/or recreate in and around the Los Angeles River watershed and Los Angeles area waterbodies receiving discharges from the East LA Facility, including the Los Angeles River, Los Angeles River Estuary, Los Angeles/Long Beach Harbor, San Pedro Bay, Long Beach City Beach, and the Pacific Ocean;

**WHEREAS,** discharges from the East LA Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Storm Water Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et   seq.* ("Clean Water Act" or "CWA");

1    **WHEREAS**, on December 4, 2013, Waterkeeper sent Defendants, the United

2    States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water

3    Resources Control Board ("State Board"), and the Los Angeles Regional Water Quality

4    Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under

5    Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The

6    Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. §

7    1311(a), and violations of the Storm Water Permit at the East LA Facility;

8    **WHEREAS**, on February 6, 2014, Waterkeeper filed a complaint against

9    Defendants in the United States District Court, Central District of California (Case No.

10   CV14-931-DDP (PLAx)), alleging violations of Section 301(a) of the Clean Water Act,

11   33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the East LA Facility

12   ("Complaint");

13   **WHEREAS**, Waterkeeper alleges Defendants to be in violation of the substantive

14   and procedural requirements of the Storm Water Permit and the Clean Water Act with

15   respect to the East LA Facility;

16   **WHEREAS**, Defendants deny all allegations in the Notice Letter and Complaint

17   relating to the East LA Facility;

18   **WHEREAS**, Waterkeeper and Defendants have agreed that it is in the Settling

19   Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions

20   appropriate to resolving the allegations set forth in the Complaint without further

21   proceedings;

22   **WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree

23   shall be made in compliance with all applicable federal and state laws and local rules and

24   regulations.

25   **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE**

26   **SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**

27   **FOLLOWS:**

28        1.      The Court has jurisdiction over   the subject matter of this action pursuant to

1    Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2         2.    Venue is appropriate in the Central District of California pursuant to Section

3    505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the East LA Facility is

4    located within this District;

5         3.    The Complaint states claims upon which relief may be granted pursuant to

6    Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

7         4.    Plaintiff has standing to bring this action;

8         5.    The Court shall retain jurisdiction over this matter for purposes of enforcing

9    the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter

10   as is necessary for the Court to resolve any motion to enforce this Consent Decree.

11   **I.    OBJECTIVES**

12        6.    It is the express purpose of the Settling Parties entering into this Consent

13   Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et*

14   *seq.*, and to resolve those issues alleged by Waterkeeper in its Complaint. In light of these

15   objectives and as set forth fully below, Defendants agree to comply with the provisions of

16   this Consent Decree and to comply with the requirements of the Storm Water Permit and

17   all applicable provisions of the Clean Water Act. Specifically, Receiving Water

18   Limitation C(2) in the Storm Water Permit requires that discharges from the East LA

19   Facility "not cause or contribute to an exceedance of any applicable water quality

20   standards contained in a Statewide Water Quality Control Plan or the applicable Regional

21   Board's Basin Plan." Effluent Limitation B(3) of the Storm Water Permit requires that

22   Best Management Practices ("BMPs") at the East LA Facility be developed and

23   implemented to achieve Best Available Technology Economically Achievable ("BAT")

24   for toxic and non-conventional pollutants and Best Conventional Pollutant Control

25   Technology ("BCT") for conventional pollutants (collectively "BAT/BCT"). Defendant

26   Consolidated shall develop and implement BMPs necessary to comply with the Storm

27   Water Permit requirement to achieve compliance with BAT/BCT standards and with the

28   applicable water quality standards. BMPs      must be developed and implemented to

ORDER RE: CONSENT
DECREE AND JUDGMENT                    3           Case No. CV14-931-DDP (PLAx)

prevent discharges and/or to reduce contamination in storm water from the East LA Facility in compliance with this Consent Decree.

## II.    AGENCY REVIEW AND TERM OF CONSENT DECREE

7.    Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendants if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. If the parties are unable to reach agreement to modify this Consent Decree so as to resolve the issues raised by the Federal Agencies, and this Consent Decree as so modified is not approved by the Federal Agencies, this Consent Decree shall be of no force and effect. Furthermore, if this Consent Decree is not approved by the Court, this Consent Decree shall be of no further force and effect.

8.    The term "Effective Date" as used in this Consent Decree shall mean the day this Consent Decree is signed and entered by a United States District Court Judge.

9.    This Consent Decree shall terminate as to the East LA Facility on June 30, 2017 (the "Termination Date"), unless there is a prior ongoing, unresolved dispute regarding Defendants' compliance with this Consent Decree. In the absence of such an ongoing, unresolved dispute, this Consent Decree shall terminate on the Termination Date. Should there be such a dispute, Waterkeeper shall file a Notice of Dispute with the Court prior to the Termination Date, which shall identify the issue in dispute. The filing of such Notice of Dispute by Waterkeeper shall extend the Termination Date until the Court determines the dispute has been resolved and thereupon dismisses the case or, alternatively, if the Settling Parties file a stipulation for dismissal.

10.    Waterkeeper may conduct an    inspection of the East LA Facility forty-

five (45) days prior to the Termination Date or, at Waterkeeper's option, following the filing of the Notice of Dispute. Defendant Consolidated will work with Waterkeeper to promptly schedule and accommodate the inspection, if requested. The inspection shall be conducted according to the rules applicable to annual site inspections in paragraphs 49-52 below.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A.   Definitions

11.   For purposes of this Consent Decree, "Cattle Grid" means a grid composed of parallel metal bars that is set at ground level in an exit way with a concrete collection basin beneath it, and is similar to the grids used to prevent cattle from crossing a roadway while allowing the passage of vehicles.

12.   For purposes of this Consent Decree, "Grattix box(es)" means the "Grattix Rain Garden in a Box" developed by Port of Vancouver USA. *See* http://www.portvanusa.com/assets/Grattix-how-to-flyer.pdf.

13.   For purposes of this Consent Decree, "Transfer Station Building" means the large building in the middle of the East LA Facility, as labeled on the East LA Facility Site Map, which is attached hereto as Exhibit A.

### B.   Non-storm Water

14.   To ensure there are no unauthorized non-stormwater discharges, any non-stormwater discharges from the East LA Facility not authorized by the Storm Water Permit or other NPDES permit shall be considered a breach of this Consent Decree.

### C.   Storm Water Pollution Reduction Measures

15.   Defendant Consolidated shall extend the canopies on the Transfer Station Building over the operational areas at the East LA Facility, in the locations labeled "Proposed Roofing" on the East LA Facility Site Map attached hereto as Exhibit A, by September 30, 2014.

16.   Defendant Consolidated shall install at least two 11,000-gallon water storage tanks at the locations specified on the East     LA Facility Site Map attached hereto as

1   Exhibit A by September 30, 2014, to capture all storm water from the canopies and

2   roofing over the Transfer Station Building. At least one of these storage tanks will be

3   installed alongside the property boundary with Knowles Avenue to capture flow from the

4   northeast half of the existing and extended roofing. At least one other storage tank will be

5   installed in the western corner of the East LA Facility along Bonnie Beach Place. The

6   placement of the water storage tanks are indicated on the East LA Facility Site Map

7   attached hereto as Exhibit A. The design specifications for the water storage tanks are

8   attached hereto in Exhibit B.

9        17.    Defendant Consolidated shall install a trench drain, as described in Exhibit

10  B, across the East LA Facility exit gates onto Whiteside Street by August 30, 2014.

11       18.    Defendant Consolidated shall install a Cattle Grid for track-off control, as

12  described in Exhibit B, at the location shown in Exhibit A by August 30, 2014.

13       19.    Defendant Consolidated shall adopt a Litter Control Log to document trash

14  control activities at the East LA Facility within thirty (30) days of the Effective Date. The

15  Litter Control Log shall be part of any and all revised Storm Water Pollution Prevention

16  Plans ("SWPPP") for the East LA Facility. A blank template for the Litter Control Log is

17  attached hereto as Exhibit C.

18       20.    Defendant Consolidated shall designate a person responsible for litter

19  control within thirty (30) days of the Effective Date. Beginning on September 1, 2014,

20  this person shall inspect and pick up litter around the perimeter of the East LA Facility

21  daily and record these activities in the Litter Control Log.

22       **D.    Sampling at the East LA Facility**

23       21.    Defendant Consolidated shall install a recording rain gauge capable of

24  continuously recording rainfall to 0.01 inches at the East LA Facility within thirty (30)

25  days of the Effective Date. Defendant Consolidated shall maintain the recording rain

26  gauge in accordance with the manufacturers' recommendations, maintain records of all

27  maintenance, maintain records of rain data, and provide such rain gauge data to

28  Waterkeeper at the end of each calendar     quarter during the Wet Season (October 1 –

May 30) for the term of this Consent Decree.

22.     In addition to the requirements of paragraph 21, Defendant Consolidated shall provide the records described in paragraph 21 to Waterkeeper within ten (10) days of any written request by Waterkeeper.

### a. Collecting Storm Water Samples

23.     By August 30, 2014, Defendant Consolidated shall develop a plan for monitoring all storm water and non-storm water discharges from the East LA Facility.

24.     2014 – 2015 Wet Season. Defendant Consolidated shall collect samples of any storm water discharges from the East LA Facility, including all discharges from the water storage tanks installed pursuant to paragraph 16, during the 2014 – 2015 Wet Season. For purposes of this Consent Decree, this includes any storm water discharge occurring during the East LA Facility's operating hours[1] or, for storm water stored onsite prior to discharge, whenever storm water is released, whether during operating hours or not.

25.     2015 – 2016 Wet Season. If Defendant Consolidated is required to install Grattix boxes at the East LA Facility pursuant to paragraph 36 below, it shall collect samples of any storm water discharges from the East LA Facility, including all discharges from the water storage tanks and Grattix boxes installed pursuant to paragraph 36, during the 2015 – 2016 Wet Season. For purposes of this Consent Decree, this includes any storm water discharge occurring during the East LA Facility's operating hours or, for storm water stored onsite prior to discharge, whenever storm water is released, whether during operating hours or not.

26.     If Defendant Consolidated is not required to install Grattix boxes at the East LA Facility pursuant to paragraph 36 below, then it shall collect storm water samples pursuant to the requirements of Section B of the Storm Water Permit during the 2015 – 2016 and 2016-2017 Wet Seasons.

---

[1] The East LA Facility's operating hours are Monday through Friday, 6am – 2:30pm.

ORDER RE: CONSENT
DECREE AND JUDGMENT

7

Case No. CV14-931-DDP (PLAx)

27.    All samples collected pursuant to paragraphs 24 and 25 shall be analyzed for the following parameters: total suspended solids, copper, lead, zinc, oil and grease, aluminum, arsenic, cadmium, iron, mercury, nickel, silver, chemical oxygen demand, pH, chromium (III), chromium (VI), and E. coli.

28.    Defendant Consolidated shall not be required to analyze storm water samples for a parameter listed in paragraph 27 if the concentrations of the parameter do not exceed the EPA Benchmark[2] or applicable water quality standards[3] for the analyte, as set forth in Table 1 below, in at least four (4) consecutive storm water samples. Defendant Consolidated shall contact Plaintiffs before discontinuing analysis for any required parameter by providing a written explanation for their decision and all relevant laboratory reports.

**b.  Sampling Analysis and Reporting**

29.    Defendant Consolidated shall use a state certified laboratory to conduct all analysis pursuant to this Consent Decree. When requesting analysis of discharges, Defendant shall select analytical limits such that, at a minimum, the method detection limits are below the Surface Water Numeric Limits in Table 1.

30.    Defendant Consolidated shall request that results of all sample analyses required by this Consent Decree be reported to them within fifteen (15) days of laboratory receipt of the sample.

31.    Defendant Consolidated shall request that results of all sample analyses required by this Consent Decree for metals be reported as total recoverable and dissolved concentration levels.

---

[2] EPA Benchmarks are listed in the EPA's NPDES Multi-Sector General Permit for Storm Water Discharges Associated with Industrial Activity.
[3] Water quality standards applicable to discharges from the East LA Facility for purposes of this Settlement Agreement include those set out in the Water Quality Control Plan: Los Angeles Region, Basin Plan for the Coastal Watersheds of Los Angeles and Ventura Counties, adopted on November 17, 1994 (as amended) ("Basin Plan") and the Criteria for Priority Toxic Pollutants for the State of California ("CTR"), 40 C.F.R. § 131.38.

32.     Defendant Consolidated shall provide the complete laboratory results of all samples collected at the East LA Facility to Waterkeeper within fifteen (15) days of receiving the results.

33.     Defendant Consolidated shall submit a written report to Waterkeeper no later than June 15 at the end of each Wet Season that contains all rain gauge data for the Wet Season, all storm water samples collected at the East LA Facility, all analytical results from storm water samples collected at the East LA Facility, and an explanation of any failure to collect and analyze a storm water discharge as required by this Consent Decree or the Storm Water Permit.

34.     Any failure to sample pursuant to the requirements of paragraphs 24 – 26 of this Consent Decree shall be documented and explained to Waterkeeper by email within five (5) days of the date a sample could have been collected during operating hours but was not.

**E.     Numeric Limits and Action Plan for Exceedances**

35.     <u>Numeric Limits for Storm Water Discharges.</u> Contaminants in any storm water discharges from the East LA Facility, including discharges of stored water, shall not exceed the limits ("Surface Water Numeric Limits") in Table 1 below.

**Table 1: Surface Water Numeric Limits**

| Contaminant | Numeric Limit[4] |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Dissolved Copper | 0.013 mg/L* |
| Dissolved Lead | 0.065 mg/L* |

---

[4] An * next to a Numeric Limit denotes a CTR Limit. The limits for pH, COD, and E. coli are from the Basin Plan. The remaining limits are EPA Benchmarks. CTR Limits are expressed as a function of total hardness in the water body based on the equations provided in Federal Register, Vol. 65, No. 97, May 18, 2000, and being hardness dependent will vary with the analyzed total hardness of the water body. The CTR Criterion Maximum levels expressed herein assume a total hardness of 100 mg/L.

| | |
|---|---|
| Dissolved Zinc | 0.120 mg/L* |
| Oil and Grease | 15 mg/L |
| Total Recoverable Aluminum | 0.75 mg/L |
| Dissolved Arsenic | 0.340 mg/L* |
| Dissolved Cadmium | 0.0043 mg/L* |
| Total Recoverable Iron | 1.00 mg/L |
| Total Recoverable Mercury | 0.0014 mg/L |
| Dissolved Nickel | 0.470 mg/L* |
| Dissolved Silver | 0.0034 mg/L* |
| Chemical Oxygen Demand | 120 mg/L |
| pH | 6.5-8.5 pH units |
| E. Coli | 235 CFU per 100 mL |
| Dissolved Chromium (III) | 0.550 mg/L* |
| Dissolved Chromium (VI) | 0.016 mg/L* |

36.    Requirements for Grattix Boxes. If any samples collected pursuant to paragraph 24 during the 2014 – 2015 Wet Season contain pollutant levels in excess of the Surface Water Numeric Limits in Table 1 above, Defendant Consolidated shall install Grattix boxes at the East LA Facility to treat all storm water collected in the water storage tanks before it is discharged from the East LA Facility. The Grattix boxes shall include removal agents designed to remove any and all pollutants present in the storm water discharges above the Surface Water Numeric Limits.

37.    Surface Water Action Plan for Table 1 Exceedances. Beginning with the 2015-2016 Wet Season, Defendant Consolidated shall submit to Waterkeeper a plan for reducing and/or eliminating the discharge of pollutants ("Surface Water Action Plan") if any sampling by Waterkeeper or Defendant demonstrates that any contaminant in any discharge from the East LA Facility exceeds the applicable Surface Water Numeric Limit in Table 1. The Surface Water Action Plan shall be submitted within forty-five (45) days

of receiving the monitoring data showing exceedances of Table 1 limits at the East LA Facility. Any subsequent sample demonstrating exceedances of Table 1 Surface Water Numeric Limits for the same constituent at the same discharge location within sixty (60) days of the sample triggering the obligation to submit a Surface Water Action Plan shall not require Defendant Consolidated to prepare an additional Surface Water Action Plan based solely on that exceedances. However, any such exceedance shall be addressed by the Surface Water Action Plan in preparation at that time.

a. <u>Surface Water Action Plan Requirements.</u> Each Surface Water Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Surface Water Numeric Limit(s), (2) an assessment of the source of each contaminant exceedance, (3) the identification of additional BMPs, including treating storm water, that shall be implemented to achieve compliance with the Surface Water Numeric Limit(s), as well as the design plans and calculations of these additional BMPs, and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than August 30 (prior to the next Wet Season).

b. <u>Surface Water Action Plan Review.</u> Waterkeeper shall have thirty (30) days upon receipt of Defendant Consolidated's Surface Water Action Plan to provide Defendant Consolidated with comments. Within fourteen (14) days from the date Waterkeeper comments on Defendant Consolidated's Surface Water Action Plan, Defendant Consolidated shall provide Waterkeeper with a written explanation if it refuses to integrate any of Waterkeeper's comments into the Surface Water Action Plan. Any disputes as to the adequacy of the Surface Water Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

c. Defendant Consolidated shall have until September 30 (following the Wet Season in which the exceedances giving rise to the obligation to submit a Surface Water Action Plan occurred) to implement the Surface Water Action Plan. Defendant Consolidated shall notify Waterkeeper in         writing when the Surface Water Action

1  Plan has been implemented.

2        d.   Defendant Consolidated shall diligently file and pursue all required local

3  agency applications for permits and/or approvals for the BMPs included in any Surface

4  Water Action Plan. Defendant Consolidated shall further diligently pursue the

5  procurement of contractors, labor, and materials to complete all such BMPs by the

6  September 30 deadline described in paragraph 37.c above, and shall use its best efforts to

7  meet these deadlines. Defendant Consolidated's unexcused failure to meet this deadline

8  shall be considered a breach of the Consent Decree.

9  **F.    Visual Observations**

10      38.    During the life of this Consent Decree, Defendant Consolidated shall

11  conduct visual observations during normal scheduled facility operating hours during

12  every rain event that produces a discharge at all discharge points at the East LA Facility.

13      39.    Defendant Consolidated shall record any pollutants, odors, discolorations, or

14  other pollutant indicators observed during these visual observations and compare the

15  results of these observations to the sampling analyses conducted at the same locations.

16  Visual observation records shall be included in any Surface Water Action Plan required

17  pursuant to the requirements of this Consent Decree.

18  **G.    Monitoring and Reporting Program Revisions**

19      40.    By August 30, 2014, or forty-five (45) days after the Effective Date,

20  whichever is earlier, Defendant Consolidated shall revise its Monitoring and Reporting

21  Program ("M&RP") for the East LA Facility to incorporate all sampling, analysis,

22  observation, and reporting requirements of this Consent Decree and the Storm Water

23  Permit.

24      41.    Defendant Consolidated shall submit the revised M&RP for the East LA

25  Facility to Waterkeeper for review and comment. Waterkeeper shall provide comments,

26  if any, to Defendant Consolidated within thirty (30) days of receipt of the M&RP.

27  Defendant Consolidated shall incorporate Waterkeeper's comments into the M&RP, or

28  shall justify in writing why any comment is    not incorporated within fifteen (15) days

of receiving comments. Any disputes over the adequacy of the revised M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Nothing in this paragraph allowing Waterkeeper to review and approve Defendant Consolidated's M&RP is intended to allow Waterkeeper to seek to modify Defendant Consolidated's obligations to implement and maintain the BMPS described in this Consent Decree or to require Defendant Consolidated to implement and maintain additional BMPS that have not been negotiated and included in this Consent Decree, or to otherwise modify the terms and conditions of this Consent Decree.

### H.    Storm Water Pollution Prevention Plan Revisions

42.    By August 30, 2014, or forty-five (45) days after the Effective Date, whichever is earlier, Defendant Consolidated shall revise the SWPPP for the East LA Facility to include all BMPs required by the Consent Decree and comply with all provisions of Section A of the Storm Water Permit.

43.    Defendant Consolidated shall submit the revised SWPPP to Waterkeeper for review and comment. Waterkeeper shall provide comments, if any, to Defendant within sixty (60) days of receipt of the SWPPP. Defendant Consolidated shall incorporate Waterkeeper's comments into the SWPPP, or shall justify in writing why any comment is not incorporated within fifteen (15) days of receiving comments. Any disputes as to the adequacy of the revised SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Nothing in this paragraph allowing Waterkeeper to review and approve Defendant's SWPPP is intended to allow Waterkeeper to seek to modify Defendant's obligations to implement and maintain the BMPS described in this Consent Decree or to require Defendant to implement and maintain additional BMPS that have not been negotiated and included in this Consent Decree, or to otherwise modify the terms and conditions of this Consent Decree.

44.    Additional SWPPP Revisions. Defendant Consolidated shall revise the SWPPP for the East LA Facility if there are any changes in the East LA Facility's operations, including, but not limited to,         changes to storm water discharge point(s)

1  or revisions and/or additions to the BMPs implemented pursuant to Surface Water Action

2  Plans.

3      45.     Defendant Consolidated shall submit any revised SWPPP to Waterkeeper for

4  review and comment within ten (10) days of the SWPPP revision. Waterkeeper will

5  provide comments, if any, to the Defendant within thirty (30) days of receipt of any

6  revised SWPPP. Defendant Consolidated shall incorporate Waterkeeper's comments into

7  any revised SWPPP, or shall justify in writing why any comment is not incorporated

8  within thirty (30) days of receiving comments. Any disputes as to the adequacy of the

9  revised SWPPP shall be resolved pursuant to the dispute resolution provisions of this

10 Consent Decree, set out in Section IV below**.**

11 **I.     Employee Training**

12      46.     Within thirty (30) days of the Effective Date of this Consent Decree,

13 Defendant Consolidated shall develop and implement a training program, including any

14 training materials needed for effective implementation of the training program, to ensure:

15 (i) that there are a sufficient number of employees delegated to achieve compliance with

16 the Storm Water Permit and this Consent Decree, and (ii) that these employees are

17 properly trained to perform the required activities to achieve compliance with the Storm

18 Water Permit and this Consent Decree ("Training Program"). At a minimum the Training

19 Program shall include at least the following:

20      a.  <u>Language</u>. Defendant Consolidated shall conduct the Training Program in

21 the language or languages in which all employees participating in the Training Program

22 are fluent.

23      b.  <u>Non-Stormwater Discharges</u>. Defendant Consolidated shall train all

24 employees on the Storm Water Permit's prohibition of non-storm water discharges, so

25 that employees know what non-storm water discharges are, that non-storm water

26 discharges can result from improper surface washing or dust control methods, and how to

27 detect and prevent non-storm water discharges.

28      c.  <u>BMPs</u>. Defendant                    Consolidated shall train all employees on

ORDER RE: CONSENT                      14              Case No. CV14-931-DDP (PLAx)
DECREE AND JUDGMENT

1    BMP implementation and maintenance to ensure that BMPs are implemented effectively
2    to prevent the exposure of pollutants to storm water, to prevent the discharge of
3    contaminated storm water, and to ensure the proper treatment of storm water at the East
4    LA Facility.

5           d.   Storm Water Sampling. Defendant Consolidated shall designate an
6    adequate number of employees necessary to collect storm water samples from each
7    discharge location as required by this Consent Decree. The training shall include the
8    proper sampling protocols, including chain of custody requirements, to ensure storm
9    water samples are properly collected, stored, and submitted to a certified laboratory.

10          e.   Visual Observation Training. Defendant Consolidated shall provide
11   training to all employees at the East LA Facility regarding visual observations pursuant to
12   this Consent Decree and the Storm Water Permit.

13          47.     Training shall be provided by a private consultant or a representative of
14   Defendant Consolidated who is familiar with the requirements of this Consent Decree
15   and the Storm Water Permit. The training shall be repeated annually, or as necessary to
16   ensure that all such employees are familiar with the requirements of this Consent Decree,
17   the Storm Water Permit, and the East LA Facility's SWPPP. All new staff shall receive
18   this training before assuming responsibilities for implementing the East LA Facility's
19   SWPPP or M&RP.

20          48.     Defendant Consolidated shall maintain training records to document
21   compliance with this section, and shall provide Waterkeeper with a copy of these records
22   within fourteen (14) days of receipt of a written request.

23   **J.    Compliance Monitoring and Reporting**

24          49.     Waterkeeper Site Inspections. Every year during the life of this Consent
25   Decree, up to three (3) Waterkeeper representatives and/or consultants (including an
26   attorney) may conduct one (1) Wet Season site inspection and one (1) Dry Season (June 1
27   – September 30) site inspection of the East LA Facility. The site inspections shall occur
28   during normal business hours. Waterkeeper       shall provide Defendant Consolidated

with forty-eight (48) hours notice (weekends and holidays excluded) prior to each Wet Season site inspection, and forty-eight (48) hours notice (weekends and holidays excluded) prior to each Dry Season site inspection. Notice shall be provided by telephone and electronic mail, and shall state the names of all persons that Waterkeeper will bring to the inspection.

50.     During the site inspections, Waterkeeper and/or its representatives shall be allowed access to the East LA Facility's SWPPP(s), M&RP, and all other monitoring records, reports, and sampling data for the East LA Facility.

51.     During the site inspections, Waterkeeper and/or its representatives may collect storm water samples at the East LA Facility.

52.     During the site inspections, Waterkeeper may take photographs or video recording of the East LA Facility. If Waterkeeper takes any photographs and/or video recording, Waterkeeper shall provide Defendants with the photographs and/or video within fourteen (14) days after any written request by Defendants for such photographs and/or videos.

53.     <u>Compliance Monitoring and Oversight</u>. Defendants shall pay a total of Two Thousand Nine Hundred Dollars ($2900) to compensate Waterkeeper for costs and fees to be incurred for monitoring Defendants' compliance with this Consent Decree. Payment shall be made within five (5) days of the Effective Date payable to "Los Angeles Waterkeeper" and delivered via wire transfer to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401. Upon request, Waterkeeper shall provide Defendants with documentation of the fees and costs incurred in connection with compliance monitoring and oversight activities.

54.     <u>Action Plan Payments</u>. Defendants shall pay Three Thousand Five Hundred Dollars ($3,500) each time an Surface Water Action Plan is submitted to Waterkeeper, except that where the Surface Action Plan proposes the treatment of storm water using a biological or mechanical treatment process (as opposed to, for example, the installation of additional roofing or Grattix boxes), then the    payment shall be Six Thousand Dollars

1   ($6,000). Payments shall be submitted simultaneously with the submittal of the Surface

2   Water Action Plan. Payments shall be made payable to "Los Angeles Waterkeeper" and

3   addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA

4   90401. Failure to submit a payment as required under this paragraph will constitute a

5   breach of the Consent Decree.

6       55.   <u>Data Reporting</u>.  During the life of this Consent Decree, Defendants shall

7   provide Waterkeeper with a copy of all Consent Decree and Storm Water Permit

8   compliance and monitoring data, including inspection reports, related to the East LA

9   Facility's coverage under the Storm Water Permit on an annual basis.

10      56.   <u>Document Provision</u>. During the life of this Consent Decree, Defendants

11  shall copy Waterkeeper on all documents related to storm water quality at the East LA

12  Facility that are submitted to the Regional Board, the State Board, and/or any state or

13  local agency, county, or municipality. Such reports and documents shall be provided to

14  Waterkeeper on the date they are sent to the agencies, counties, and/or municipalities.

15  Any correspondence related to Defendant's compliance with the Storm Water Permit or

16  storm water quality received by Defendants from any regulatory agency, state or local

17  agency, county, or municipality shall be provided to Waterkeeper within ten (10) days of

18  receipt by Defendants.

19  **K.   Environmental Project, Reimbursement of Litigation Fees and Costs, and**

20  **Stipulated Payments**

21      6.   <u>Environmental Project</u>. To remediate the alleged environmental harms

22  resulting from non-compliance with the Storm Water Permit alleged in the Complaint,

23  Defendants agree to make a payment of Fifteen Thousand Dollars ($15,000) to the Rose

24  Foundation to fund environmental project activities that will reduce or mitigate the

25  impacts of storm water pollution from industrial activities on the Southern California

26  Bight and its tributaries. The payments shall be made within three (3) days of the

27  Effective Date payable to "Tim Little, Rose Foundation for Communities and the

28  Environment" and delivered via wire          transfer to: 1970 Broadway, Suite 600,

Oakland, California 94612-2218. Defendants shall provide Waterkeeper with a copy of such payment.

57.     <u>Reimbursement of Waterkeeper's Fees and Costs</u>. Defendants shall pay a total of Thirty-Seven Thousand Dollars ($37,000) to Waterkeeper to partially reimburse Waterkeeper for its investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made within three (3) days of the Effective Date payable to "Los Angeles Waterkeeper" and delivered via wire transfer to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401.

58.     <u>Stipulated Payment</u>. Defendants shall make a remediation payment of One Thousand Dollars ($1,000) for each missed deadline included in this Consent Decree, not excused by Force Majeure. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by the Defendants' alleged discharges and shall be awarded to the Rose Foundation for Communities and the Environment.  Defendants agree to make the stipulated payment within thirty (30) days of a missed deadline. The payments shall be mailed via regular mail to the attention of Tim Little, Rose Foundation for Communities and the Environment, 1970 Broadway, Suite 600, Oakland, California 94612-2218. The Defendants shall provide Waterkeeper with a copy of each such payment at the time it is made.

**IV.   DISPUTE RESOLUTION**

59.     This Court shall retain jurisdiction over this matter until the final termination date defined in paragraph 9 above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

60.     <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by            notifying all other Settling Parties in

writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

61.     If the Settling Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

62.     Enforcement Fees and Costs. Litigation costs and fees incurred in conducting a meet and confer session(s) or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, may be awarded at the Court's discretion to either Settling Party in accordance with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

## V.     MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

63.     Waterkeeper's Release. Upon the Effective Date of this Consent Decree, Waterkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, Defendants (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waives all claims alleged in the Notice Letter and/or Complaint up to the Effective Date of this Consent Decree.

64.     Defendants' Release. Upon the Effective Date of this Consent Decree, Defendants, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their                  successors and assigns, and their agents,

attorneys, and other representatives releases Waterkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Waterkeeper's Notice Letter and Complaint up to entry of this Consent Decree by the Court.

65.     Upon Court approval and entry of this Consent Decree, the Court shall retain jurisdiction over Republic Services, Inc. for the sole purpose of enforcing the guaranty of Republic Services, Inc. of the performance of the obligations of Defendants. Republic Services, Inc. in executing this Consent Decree guarantees the performance of all obligations of Defendants, including, but not limited to, the payment of any monetary sums required under this Consent Decree.

66.     Nothing in this Consent Decree limits or otherwise affects Waterkeeper's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Defendants' compliance with the Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

## VI.   **MISCELLANEOUS PROVISIONS**

67.     <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

68.     <u>Force Majeure</u>. Force Majeure includes any act of God, war, fire, earthquake, flood, or natural catastrophe;       civil disturbance, vandalism, sabotage, or

terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from, any governmental agency. Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

a.   If Defendants claim Force Majeure, they shall notify Waterkeeper in writing within twenty-one (21) days of the date that Defendants first knew of the event or circumstance that caused or would cause a violation of this Consent Decree. The notice shall describe the reason for the nonperformance and the specific obligations under the Consent Decree that are or have been affected by the Force Majeure. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendants to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. Defendants shall adopt all reasonable measures to avoid and minimize such delays.

b.   In the case of governmental permits and approvals required for structural BMPS, Defendants shall diligently file and pursue all required local agency applications for permits for the structural BMPs described in this Consent Decree, and shall diligently pursue the procurement of contractors, labor and materials to complete all such BMPs by the deadlines set forth herein, and shall use their best efforts to meet these deadlines. Defendants may be excused from meeting the deadlines in this Consent Decree for a specific BMP if circumstances beyond the reasonable control of Defendants as well as delays in obtaining any required                    governmental permits or approvals due to

the permitting agency's actions or inactions or delays associated with the fabrication and/or construction of materials and structural BMPs prevent the attainment of the deadline for a specific BMP. Such delays may only be excused if all of the following requirements are met: 1) Defendants have notified Waterkeeper via email, telephone call, and first class mail within ten (10) days of first learning about the anticipated delay; 2) Defendants continue to exercise due diligence and best efforts in pursuing the permitting and implementation of the BMP in question and proposes a reasonable revised deadline; and 3) Defendants meet the revised deadline. Any excused delay shall not excuse Defendants from implementing their other, unexcused obligations under this Consent Decree. The estimated average time for installation of a cattle grid and/or exit trench from the time of receiving the permit is 3-4 weeks from receipt of the permit. The estimated average time for installation of a canopy from the time of receiving the permit is 12-16 weeks from receipt of the permit.

      c.  The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible due to Force Majeure, despite the timely good faith efforts of Defendants, new deadlines shall be established.

      d.  If Waterkeeper disagrees with Defendants' notice of Force Majeure, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section IV. In such proceeding, Defendants shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by Force Majeure and the extent of any delay attributable to such circumstances.

      69.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

      70.    <u>Choice of Law</u>. The laws of the    United States shall govern this Consent

Decree.

71.   <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

72.   <u>Correspondence</u>. Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

<u>If to Plaintiff:</u>

Tatiana Gaur, Staff Attorney
tgaur@lawaterkeeper.org
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, California 90401


With copies to:

Liz Crosson, Executive Director
liz@lawaterkeeper.org
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, California 90401

<u>If to Defendants:</u>

Thomas M. Bruen (Bar No. 63324)
tbruen@tbsglaw.com
Law Offices of Thomas M. Bruen, P.C.
1990 N. California Boulevard, Suite 620
Walnut Creek, California 94596

With copies to:

Ron Krall
rkrall@republicservices.com
Area President
12949 Telegraph Road
Sante Fe Springs, California 90670

Tim Benter
tbenter@republicservices.com
Vice President and Deputy General Counsel
Republic Services, Inc.
18500 North Allied Way
Phoenix, Arizona 85054

73.    Notifications of communications shall be deemed submitted three (3) business days after having been set via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

74.    <u>Effect of Consent Decree</u>. Except as provided herein, Waterkeeper does not, by its consent to this Consent Decree, warrant or aver in any manner that Defendants' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

75.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

76.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

77.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

78.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent

Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

79.   Authority. The undersigned representatives for Plaintiff and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

80.   The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

81.   The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IT IS SO ORDERED.**

Date:  October 10, 2014

_____
Honorable Dean D. Pregerson
United States District Judge
Central District of California